(22 Misc. Rep. 520.)

HOROWITZ et al. v. PAKAS.

(City Court of New York, General Term.   February 7, 1898.)

1. MOTION TO DISMISS—HARMLESS ERROR.
When a motion to dismiss the complaint, made at close of plaintiffs' case, on the ground of failure of proof, which should have been granted, is denied, and defendant, in his evidence, supplies the lacking proof, the error is rendered harmless.

2. REPRESENTATION—PARTNERSHIP—PERSONAL LIABILITY.
Where defendant, doing business in the name of a company, had had dealings with plaintiffs, and had represented to them that he constituted the company, and afterwards purchased goods from plaintiffs in the name of said company, telling plaintiffs again that he constituted the company, he is liable personally, whether he had a partner or not.

Appeal from trial term.

Action by Philip Horowitz and others against Solomon L. Pakas for goods sold and delivered.   Verdict for plaintiffs.   Defendant appeals.   Affirmed.

Argued before McCARTHY and O'DWYER, JJ.

David M. Newburger, for appellant.
Max D. Steuer and A. Levy, for respondents.

O'DWYER, J.   The action was brought to recover the agreed price of 560 lamps, alleged to have been delivered to the defendant on the 11th day of May, 1897.

The plaintiffs' witness Joseph Horowitz, testified:

"I did, on the 11th day of May, deliver 560 bicycle lamps.   None of those lamps have ever been returned.   The plaintiffs never received any of those lamps from the defendant.   The agreed price of said lamps was nine dollars per dozen, less ten per cent.   For 560 lamps that would be three hundred and seventy-eight dollars.   I have demanded payment of that sum.   It was not paid."   "I spoke to Mr. Pakas after the delivery of these 560 lamps.   I never

spoke as to whether he received them or not. He said he received 560 lamps. I asked him for a check. He said he would send me a check. He sent me a check for $268. The check was returned to Mr. Pakas."

And the defendant admits that he received the return of the check. The witness Horowitz testified:

"We delivered them by the truckman. There were delivered 560 lamps, with our boy. They were delivered with our errand boy with a truckman. They are not in court. We have the receipt for the goods."

The defendant testifies:

"I gave him the order for ten thousand lamps. They were not delivered at all. I don't know how many we got. I believe about one thousand; maybe two thousand. We have had about three or four deliveries in all. I sent a check for $268,—for the full amount,—as I afterwards tried to dispose of those lamps sent."

A letter from the defendant—Exhibit B—is introduced in evidence, and is as follows:

"We have yours of yesterday's date, and beg to hand you check for $268.00 to settle our account with you. We have sufficient proof on hand that you sold to others at ten cents less than you did to us, and, as we have your contract in hands, wherein you agreed to make good to us any such difference in price that should result from your underselling the price you agreed to maintain in your agreement of the 22d inst., we have, therefore, in accordance with the same, taken off the difference on your bills of the 26th ult. and 11 inst., as you have violated your agreement."

This letter is dated May 25th, and in it is inclosed a check for the bill of May 11th. The bill of May 11th is the bill that is sued for in this action.

This testimony tended to prove the delivery of the goods, and the defendant's motion to dismiss the complaint on that ground was properly denied.

An exception to the denial of the defendant's motion for a dismissal of the complaint is not available if the facts supplied by the evidence, after the plaintiffs rested and the motion was made, are requisite to support the action. On appeal the court is to determine, on the whole testimony, whether or not delivery is proved, and not simply on the testimony submitted before the motion to dismiss the complaint; and we are of the opinion that plaintiffs did, by a fair preponderance of evidence, prove a delivery of the goods in question.

The defendant's next defense was that the transaction was had with a partnership of which this defendant was one, and an individual known as Emanuel A. Brecher was also one of the firm, and therefore a necessary party. The transaction in question was had with the International Cycle Fittings Company of the city of New York.

The plaintiffs' witness testified:

"I asked him if anybody else was in the business of the International Cycle Fittings Company. He said, 'No, I am Mr. Pakas, and I am the owner of the International Cycle Fittings Company.' And when I closed the sale with him for 10,000 lamps, I asked him, 'Who is the International Cycle Fittings Company?' and he said: 'My name is Pakas. I am the proprietor of the International Cycle Fittings Company.' "

The defendant testified that he had a conversation with Horowitz, and that Horowitz said:

49 N.Y.S.—64

"If I give him a large order, that he will put me in a position where I can sell anybody lamps at just the same prices as they would sell it to themselves, but he wanted a large order,—10,000 lamps. I agreed to it, and he put the price down to seventy-five cents. I gave him the order for 10,000 lamps. I sent a check for $268.00. They said I could buy them at such and such prices. I could not sell them afterwards. I know a corporation known as the Crown Electrical Manufacturing Company. I had an agreement with them at the present time. That agreement is in existence to-day, and that agreement describes me, Solomon L. Pakas, trading as the International Cycle Fittings Company. I signed checks before the 15th of February, the same as we do to-day. This is one of our checks, issued the day before yesterday. I signed that 'International Cycle Fittings Company. Solomon L. Pakas.' I have a business card. There is nothing on that card about Emanuel A. Brecher. Those were printed before that time, too. I have no cards with Emanuel A. Brecher on. I have no billheads. We are using the old ones as they come."

The evidence showed that the plaintiffs and the defendant had had some business dealings prior to the one of April 22d. The defendant nowhere testifies that he ever notified the plaintiffs that he changed his firm, and that he took in a partner. They had a right to assume, therefore, that the firm remained as before; and he never disclosed to them that there was a partner, therefore he is liable to them individually, even though he did have a partner when this transaction of April 22d took place. It is uncontradicted on the record that the plaintiffs had any knowledge that the defendant had any partner, or that he took any in, and the defendant himself testified that everything before he became a partner was just the same after. Upon this evidence the court charged much more favorably to the defendant than the defendant was entitled to. The court charged:

"If you find that there was a partnership, at the time this transaction took place, between the plaintiffs and the defendant, you will find for the defendant. If you find that there was no partnership, that the goods were sold and delivered to Pakas solely, your verdict will be for the plaintiffs."

This was an affirmative defense, and the burden of proof was on the defendant. The jury, after this instruction, found that there was no partnership; that the goods were sold solely to the defendant, Pakas; and rendered a verdict for the plaintiffs; and we are of the opinion that the verdict is borne out by the evidence, and should not be disturbed.

The defendant's third defense—that there was a breach of contract on the part of the plaintiffs, in that they sold the goods at a price lower than that which they contracted to sell at—was unsupported by any evidence.

The exceptions taken during the trial do not show reversible error, and it follows that the judgment and order appealed from should be affirmed, with costs.